ALYESKA PIPELINE SERVICE COM-
PANY, Agent for the Owners of the
Trans Alaska Pipeline System, Appel-
lant,

v.

STATE of Alaska and Michael Menge,
Commissioner of Natural
Resources, Appellees.

No. S–14021.

Supreme Court of Alaska.

Nov. 23, 2012.

Thomas E. Meacham, Anchorage, for Appellant.

Thomas A. Ballantine, Senior Assistant Attorney General, Anchorage, and John J. Burns, Attorney General, Juneau, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

Alyeska Pipeline Service Company (Alyeska), the agent for the owners of the Trans Alaska Pipeline System (TAPS), leases the TAPS right-of-way from the Alaska Department of Natural Resources (Department). Alyeska appealed the Department's 2002 appraisal of the TAPS lease price to Michael Menge, the Commissioner of the Department, and then to the superior court. Both affirmed the Department's appraisal. Alyeska appeals to us, arguing: (1) the Department misinterpreted AS 38.35.140(a), the statute governing the calculation of the lease price; (2) the Department was required to adopt its interpretation of AS 38.35.140(a) as a regulation under the Administrative Procedure Act (APA); and (3) the appraisal improperly included submerged lands within the right-of-way when the Department failed to establish that the State holds title to those lands. We affirm.

## II. FACTS AND PROCEEDINGS

Under the Right–Of–Way Leasing Act,[1] the Department must adjust the lease price for the TAPS right-of-way every five years.[2] In 2002 the Department and the U.S. Bureau of Land Management hired Black–Smith & Richards, Inc. to appraise the state and federal lands within the TAPS right-of-way. The Department instructed Black–Smith & Richards to appraise the TAPS right-of-way based on the fair market value of the land: "As required by Alaska Statute 38.35.140,

---

1. AS 38.35.010–.260.

2. *See* AS 38.35.140(a) (providing that rental values of right-of-way leases must be appraised every five years and, if necessary, adjusted).

market rent will be 'based on the appraised fair market value of the land' with no allocation made for rights granted or retained." In December 2002 the Department notified Alyeska that it had approved the Black–Smith & Richards appraisal and the annual rent for the state lands within the TAPS right-of-way would be $236,000 per year.

Alyeska hired Al Olson, a real estate appraiser, to review the Black–Smith & Richards appraisal. Olson's review noted several potential issues with the appraisal, two of which are relevant here. Olson first observed that the appraisal's valuation of state lands at 100 percent fee value did not account for the fact that the TAPS lease did not grant Alyeska exclusive use of the land. Olson speculated that if Black–Smith & Richards had been allowed to fully consider Alyeska's non-exclusive use of the TAPS right-of-way, it might have valued the land at 75 percent fee value instead. Olson referred to this as the "[e]ncumbrance of [r]ights" issue. Olson also observed that the Black–Smith & Richards appraisal included 205.78 acres of submerged lands that were "[r]eported as disputed acreage in navigable waterways," but the appraisal did not specifically value those lands as such. He referred to this as the "[s]ubmerged [l]ands" issue.

In January 2003 Alyeska appealed the Department's appraisal decision to the Commissioner.[3] Alyeska raised the encumbrance of rights issue, arguing "the appraisal values the Owners' TAPS interest in state lands at 100 percent of fee value, despite the fact that the Owners' rights are not exclusive." Alyeska also raised the submerged lands issue, arguing the appraisal failed to account for the reduced value of submerged lands and failed to address an apparent title dispute between the state and federal governments over the submerged lands. Alyeska requested that the appraisal be reexamined and revised on these grounds.

In September 2006 the Commissioner affirmed the Department's decision regarding the TAPS lease price. The Commissioner rejected Alyeska's encumbrance of rights argument, ruling the Right–Of–Way Leasing

Act required the lease price to be based on the fair market value of the state land without reduction for rights retained by the State or granted to third-parties. The Commissioner declined to address the submerged lands issue, stating the issue was "[n]ot addressed in this decision per oral agreement with Alyeska."

Alyeska appealed to the superior court, arguing the Commissioner had incorrectly concluded that the TAPS lease was "required by statute to be assessed at 100 percent of fee simple value, despite the fact that the Owners' leasehold rights are not exclusive." Alyeska also disputed that there was an "oral agreement" on the submerged lands issue and asked the superior court to remand the issue to the Commissioner to determine "[w]hether the appraisal properly considered the potential difference in value between uplands and submerged lands." The superior court remanded this issue to the Commissioner. In April 2008 the Commissioner affirmed the appraisal's valuation of the submerged lands within the TAPS right-of-way. In August 2010 the superior court affirmed the Commissioner's final ruling.

Alyeska appeals, maintaining its arguments that the Department misinterpreted AS 38.35.140(a), the statute governing the calculation of lease prices under the Right–Of–Way Leasing Act, and that valuation of the TAPS right-of-way lease should include consideration of the non-exclusive nature of Alyeska's leasehold interest. Alyeska also argues that even if the Department correctly interpreted the statute, the Department was required to adopt its interpretation as a regulation under the APA. Finally, Alyeska argues that the appraisal improperly included submerged lands in the TAPS right-of-way when the Department failed to establish that the State holds title to those lands.

## III. STANDARD OF REVIEW

In an administrative appeal, we independently review the merits of the agen-

---

**3.** Alyeska sent the Department a letter requesting reconsideration of the appraisal decision. The

Department treated the letter as a timely appeal to the Commissioner.

cy's decision.[4] We apply one of four standards of review:

(1) the substantial evidence standard applies to questions of fact; (2) the reasonable basis standard applies to questions of law involving agency expertise; (3) the substitution of judgment standard applies to questions of law where no expertise is involved; and (4) the reasonable and not arbitrary standard applies to review of administrative regulations.[5]

## IV. DISCUSSION

### A. The Department's Interpretation Of AS 38.35.140(a) Was Reasonable, And The Department Was Not Required To Adopt It As A Regulation Under The Administrative Procedure Act.

Alaska Statute 38.35.140(a) provides: "The lease price for a right-of-way lease shall be the annual fair market rental of the state land included in the right-of-way based on the appraised fair market value of the land." The Right–Of–Way Leasing Act broadly defines "state land" as "any interest owned by the state in land if the interest is sufficient to permit the state to lease it under the authority of this chapter." [6] The Act also refers to the definition under the Alaska Land Act, which defines "state land" as "all land, including shore, tide, and ·submerged land, or resources belonging to or acquired by the state." [7]

The Commissioner rejected Alyeska's argument that the TAPS appraisal incorrectly valued the owners' interest in state lands at 100 percent fee value, despite the fact that the owners' leasehold rights were not exclusive. Instead, the Commissioner reasoned that AS 38.35.140(a) required the lease price to be based on the fair market value of the state land included in the right-of-way, and state land was defined to include "any interest owned by the State, not just the interest

granted to Alyeska via the right-of-way agreement." The Commissioner concluded that AS 38.35.140(a) did not require a reduction in value for rights retained by the State or granted to third-parties where, as here, those interests did not reduce the value of the land, explaining:

The statutory requirement that rent is the "annual fair market rental value of the state land included in the right-of-way" does not provide for a reduction in value for retained rights. The grant of other minor interests in the right-of-way to third parties does not reduce the value of the land. In the case of TAPS, the State owns fee simple title subject to easements typical for large parcels. Those easements typically have no significant or measurable effect on the market value of large parcels. Examples are section line easements, roads, RS 2477 trails, and a right-of-way for a fiber optic line.... Because the value of the right-of-way is not reduced by third-party interests, that instruction was appropriate for TAPS, even though the State retains the right to grant additional interests in the right-of-way.

The Commissioner also observed that Alyeska's use of the TAPS right-of-way was protected from incompatible uses by AS 38.35.120(a)(12), and found that "[a]s of the effective date of the appraisal, none of the third-party interests within the TAPS right-of-way interfere with the TAPS right-of-way grant." Alyeska challenges this ruling on several grounds.

#### 1. Statutory interpretation

The parties first dispute whether the plain language of AS 38.35.140(a) requires consideration of rights granted and retained under the lease—in other words, the leasehold interest—when calculating the lease price. We must first consider which standard of review

---

4. *Alyeska Pipeline Serv. Co. v. DeShong,* 77 P.3d 1227, 1231 (Alaska 2003).

5. *Alaskan Crude Corp. v. State, Dep't of Nat. Res., Div. of Oil & Gas,* 261 P.3d 412, 419 (Alaska 2011) (quoting *Pasternak v. State, Commercial Fisheries Entry Comm'n,* 166 P.3d 904, 907 (Alaska 2007)).

6. AS 38.35.230(9)(C).

7. AS 38.05.965(21); *see also* AS 38.35.230(9)(A) (providing "state land" means " 'state land' as defined in AS 38.05.965").

to apply to the Department's interpretation of AS 38.35.140(a).

■ When reviewing an agency's interpretation of a statute, we apply the reasonable basis standard when the interpretation implicates agency expertise or a determination of fundamental policies within the scope of the agency's statutory functions.[8] We apply the independent judgment standard when "the agency's specialized knowledge and experience would not be particularly probative on the meaning of the statute."[9]

In *Marathon Oil Company v. State, Department of Natural Resources*, we recently applied the reasonable basis standard to the Department's interpretation of a statute governing the method for calculating royalties for oil and gas leases.[10] We concluded that the Department had special expertise relevant to interpreting the statute because it is the Department's job to manage the State's resources and collect royalties from gas leases, and the Department has expert knowledge of the State's royalty and audit system.[11]

Similarly, in this case the Department has special expertise relevant to interpreting AS 38.35.140(a), the statute governing the method for calculating lease prices for oil and gas pipeline rights-of-way, because the Department is charged with granting these leases and adjusting and collecting their rent.[12] We conclude that the reasonable basis standard is the applicable standard of review for this issue. Accordingly, we consider whether the Department's interpretation of AS 38.35.140(a) is reasonable, and conclude that it is.

■ The Department's interpretation of AS 38.35.140(a) is consistent with the plain language of the statute and the statutory definitions of "state land." The statute specifies that the lease price must be based on the fair market value of the state land included in the right-of-way: "The lease price for a right-of-way lease shall be the annual fair market rental of the state land included in the right-of-way based on the appraised fair market value of the land."[13] As the Department argues, the Right–Of–Way Leasing Act broadly defines state land as all land and any interest in land owned by the State.[14] Thus, under the plain language of AS 38.35.140(a), the basis for calculating the lease price is the fair market rental value of the State's interest in the land included in the right-of-way, not the leasehold interest granted to the lessee.

Alyeska argues that the broad definition of "fair market value" encompasses consideration of rights granted or retained under the lease, such as the non-exclusive nature of the TAPS lease. "Fair market value" is broadly defined as "the price a willing buyer would pay to purchase the asset on the open market from a willing seller."[15] Although Alyeska focuses on the fair market value of the leasehold interest,[16] the correct analysis fo-

8. *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (citing *Matanuska–Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986)).

9. *Id.* (quoting *Matanuska–Susitna Borough*, 726 P.2d at 175) (internal quotation marks omitted).

10. *Id.* at 1082–83.

11. *Id.* at 1082. We have also applied the reasonable basis standard of review to a taxing authority's valuation of real property, stating "real property assessments encompass questions of fact and law that involve agency expertise." *Varilek v. Burke*, 254 P.3d 1068, 1070–71 (Alaska 2011).

12. *See, e.g.*, AS 38.35.015 (powers of the commissioner); AS 38.35.020 (granting right-of-way leases); AS 38.35.140 (determining lease prices, adjusting lease prices, and processing payments).

13. AS 38.35.140(a).

14. *See* AS 38.35.230(9)(C) (defining "state land" as "any interest owned by the state in land."); AS 38.05.965(21) (defining "state land" as "all land, including shore, tide, and submerged land, or resources belonging to or acquired by the state").

15. *Martin v. Martin*, 52 P.3d 724, 731 (Alaska 2002); *see also* BLACK'S LAW DICTIONARY 1691 (9th ed. 2009) (defining "fair market value" as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction").

16. On appeal to the Commissioner, Alyeska argued the appraisal improperly valued "the Owners' TAPS interest in state lands at 100 percent of fee value, despite the fact that the Owners' rights are not exclusive." On appeal to the superior

cuses on the fair market value of the state land. But we agree that if there are third-party interests or uses that affect or reduce the value of the land, as opposed to the value of the lease, then the fair market rental value of that land (meaning the price a renter would willingly pay on the open market in an arm's-length transaction) would necessarily take those third-party interests into account.[17]

Alyeska argues that because the TAPS lease is non-exclusive, there are numerous third-party interests in the land that "must actually or potentially be accommodated within the TAPS right-of-way" and which "depreciate and burden its fair market leasehold value to the lessee." But as the Commissioner explained, the TAPS right-of-way is protected from third-party interference by statute. Alaska Statute 38.35.120(a)(12) provides that

> the granting of the right-of-way lease is subject to the express condition that ... the lessee agrees and consents to the occupancy and use by the state, its grantees, permittees, or other lessees *of any part of the right-of-way not actually occupied or required by the pipeline* for the full and safe utilization of the pipeline, for necessary operations incident to land management, administration, or disposal.

court, Alyeska argued the appraisal and the Commissioner's ruling "erroneously state that the Owners' leasehold interest in state lands ... is required by statute to be assessed at 100 percent of fee simple value, despite the fact that the Owners' leasehold rights are not exclusive." And on appeal here, Alyeska repeatedly characterizes the issue as the "appraisal of a lease," the "lease's fair market rental value," and the "fair market rental value of the leasehold interests that Alyeska, as lessee, has in fact acquired."

17. *See* AS 38.35.140(a) (providing lease price must be "based on the appraised fair market value of the land"); *Martin*, 52 P.3d at 731 (defining "fair market value").

18. AS 44.62.010–.950. As a threshold matter, Alyeska argues that because it raised this argument before the superior court and the Department did not address or respond to the issue, the superior court was required to treat the Department's failure to respond as a concession and the Department is now precluded from opposing the

(Emphasis added.) Additionally, the Commissioner expressly considered the third-party interests affecting the state land included in the TAPS right-of-way, including "section line easements, roads, RS 2477 trails, and a right-of-way for a fiber optic line," and found "[t]he grant of other minor interests in the right-of-way to third parties does not reduce the value of the land" and that none of these third-party interests had interfered with the TAPS right-of-way as of the date of the appraisal.

The Department's conclusion that the plain language of the statute requires the lease price to be based on the fair market value of the state land within the right-of-way, rather than the fair market value of the leasehold interest, is reasonable. And there is no indication that third-party interests have affected the rental value of the state land within the TAPS right-of-way, given the statutory protection under AS 38.35.120(a)(12) and the Commissioner's findings on this issue. Accordingly, we affirm the Department's interpretation of AS 38.35.140(a) and its determination of the appropriate lease price.

**2. Administrative Procedure Act**

 Alyeska next argues that even if the Department correctly interpreted AS 38.35.140(a), the Department's interpretation is invalid because it has not been adopted as a regulation under the APA.[18] We apply our

issue on appeal. We have held that a party abandons or waives an issue by failing to *raise* it in the superior court. *See, e.g., Nenana City Sch. Dist. v. Coghill*, 898 P.2d 929, 934 (Alaska 1995) ("In agency review, an issue may be abandoned on appeal to the superior court, either by failing to include it in the points on appeal or by inadequate briefing.... Furthermore, an argument not raised in a suit before the trial court will not be considered on appeal."). Alyeska cites no authority for the proposition that when a party fails to *respond* to an argument raised by another party in an administrative proceeding, the superior court must treat that party's silence as a concession, or that the party then waives the right to oppose the argument if it is raised again on appeal. Here, the superior court implicitly rejected Alyeska's APA argument by affirming the Commissioner's ruling. Alyeska then raised the argument again in its appeal to this court. As the appellee, the Department is entitled to respond to all issues and arguments raised by the appellant. *See* Alaska R.App. P. 212(c)(1)(I) & (c)(2).

independent judgment to determine whether an agency action is a regulation subject to the notice and public comment provisions of the APA.[19]

■ Alaska Statute 38.35.190 provides that the APA applies to regulations adopted by the Commissioner under the Right–Of–Way Leasing Act. While the APA broadly defines "regulation," it does not encompass every interpretation of a statute by an agency.[20] "Nearly every agency action is based, implicitly or explicitly, on an interpretation of a statute or regulation authorizing it to act. A requirement that each such interpretation be preceded by rulemaking would result in complete ossification of the regulatory state."[21] When an agency's interpretation does not add substantive requirements to the statute but simply interprets the statute "according to its own terms," the agency is not required to adopt the interpretation as a regulation under the APA.[22]

For example, in *Marathon Oil Company* we recently addressed whether the Department was required to adopt its interpretation of a statute as a regulation before applying that interpretation to calculate royalties for oil and gas leases.[23] We stated that "[w]e have been hesitant to force agencies to promulgate all statutory interpretations as regulations," and "absent statutory restrictions and due process limitations, administrative agencies have the discretion to set policy by adjudication instead of rulemaking."[24] We

then held: "DNR made its statutory interpretation in the context of adjudicating applications for contract pricing. Because we permit agencies to make new statutory interpretations in adjudications and because DNR's interpretation does not impose 'any new substantive requirements,' we hold that DNR was not required to promulgate its interpretation as a regulation."[25]

Here, as in *Marathon Oil Company*, the Department interpreted AS 38.35.140(a) in the context of adjudicating the TAPS right-of-way appraisal. The Department's interpretation does not impose new substantive requirements but simply interprets and applies the plain language of the statute. Accordingly, the Department was not required to adopt its interpretation as a regulation under the APA.

### 3. Burden on interstate commerce

■ Finally, Alyeska argues that the Department's interpretation of AS 38.35.140(a) unlawfully burdens interstate commerce in violation of article I, section 8 of the federal constitution because it results in a lease price that exceeds "fair compensation" for a nonexclusive lease such as the TAPS lease. Alyeska did not raise this issue in its appeal to the Commissioner or in its points on appeal to the superior court, but raised the issue for the first time in its reply brief before the superior court.[26] Alyeska also

**19.** *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1086 (Alaska 2011).

**20.** *See* AS 44.62.640(a)(3) (defining "regulation" as "every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of a rule, regulation, order, or standard adopted by a state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one that relates only to the internal management of a state agency."); *Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation*, 145 P.3d 561, 573 (Alaska 2006) ("Although the definition of 'regulation' is broad, it does not encompass every routine, predictable interpretation of a statute by an agency.").

**21.** *Alyeska Pipeline Serv. Co.*, 145 P.3d at 573.

**22.** *Id.*

**23.** *Marathon Oil Co.*, 254 P.3d at 1086 (quoting *Alaska Ctr. for the Env't v. State*, 80 P.3d 231, 244

(Alaska 2003)) (internal quotation marks omitted).

**24.** *Id.* at 1086–87 (quoting *Amerada Hess Pipeline Corp. v. Alaska Pub. Utils. Comm'n*, 711 P.2d 1170, 1178 (Alaska 1986)).

**25.** *Id.* at 1087 (quoting *Smart v. State, Dep't of Health & Soc. Servs.*, 237 P.3d 1010, 1017 (Alaska 2010)).

**26.** Alyeska argues that the Department first introduced the issue before the superior court, and therefore Alyeska properly responded to the issue in its reply brief. In briefing to the superior court, the Department discussed the legislative history of AS 38.35.140 in support of its statutory interpretation argument. The Department attached excerpts from old trial court briefs showing that in 1972 several oil companies challenged the original version of the statute as unconstitutional, prompting the legislature to amend the

offers little argument or authority supporting its argument, relying exclusively on a single paragraph quoted from a 1973 trial court brief. The Department argues that Alyeska has waived this argument by failing to properly raise it before the Commissioner or on appeal to the superior court, or has abandoned the issue by briefing it in such a cursory fashion. We agree.

Arguments are waived on appeal if they are inadequately briefed or raised for the first time in a reply brief.[27] It is especially important to properly raise and brief constitutional issues.[28] Because Alyeska first raised this Commerce Clause issue in a reply brief on appeal to the superior court, and offers very little briefing or legal authority in support of its argument, this issue has been waived.

### B. The Department Was Not Required To Prove That The State Held Title To The Submerged Lands Within The TAPS Right–Of–Way.

#### 1. Waiver

Alyeska next argues that the Department failed to prove the State has legal title to the submerged lands included in the TAPS right-of-way, and the TAPS owners are therefore required to pay rent to both the state and federal governments for the same tracts of submerged lands within the TAPS right-of-way. The Department again argues that we should decline to address an issue improperly raised for the first time on appeal. But Alyeska properly raised this title issue in its initial appeal to the Commissioner and in its points on appeal to the superior court. Therefore, we will consider the issue on appeal.

#### 2. Title disputes over submerged lands

Alyeska argues that title to submerged lands does not formally pass to the State until the United States formally acquiesces or the State acquires title through a quiet title action in federal court, and that the State must provide documentary evidence demonstrating it has title to these lands before charging rent for them. Because this issue involves a question of law and there is no agency ruling on this issue to review,[29] we apply our independent judgment.[30]

Under the equal footing doctrine and the Submerged Lands Act, Alaska obtained title to the land beneath all navigable waters within its boundaries upon its admission to statehood in 1959.[31] The United States re-

---

statute to its present version. In its reply brief, Alyeska submitted an additional excerpt from the old trial court briefs and argued for the first time that valuing the state lands included in the TAPS right-of-way at 100 percent fee interest would unlawfully burden interstate commerce.

27. *See, e.g., State v. Pub. Safety Emps. Ass'n*, 257 P.3d 151, 165 (Alaska 2011) ("[A]rguments are waived on appeal if they are inadequately briefed."); *Barnett v. Barnett*, 238 P.3d 594, 603 (Alaska 2010) ("[W]e deem waived any arguments raised for the first time in a reply brief...."); *Nenana City Sch. Dist. v. Coghill*, 898 P.2d 929, 934 (Alaska 1995) ("In agency review, an issue may be abandoned on appeal to the superior court, either by failing to include it in the points on appeal or by inadequate briefing."); *Fairview Dev., Inc. v. City of Fairbanks*, 475 P.2d 35, 36 (Alaska 1970) (stating single conclusory paragraph without citation to authority was inadequate to raise issue of equal protection before the court on appeal).

28. *See United States v. Phillips*, 433 F.2d 1364, 1366 (8th Cir.1970) ("[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.").

29. The Commissioner did not address any of Alyeska's arguments regarding submerged lands in its initial ruling. Alyeska did not ask the superior court to remand the title issue, arguing only that the Commissioner had failed to address whether the appraisal "properly considered the potential difference in value between uplands and submerged lands." The Commissioner affirmed the valuation issue on remand, but never explicitly addressed the title issue.

30. *See Alaskan Crude Corp. v. State, Dep't of Natural Res., Div. of Oil & Gas*, 261 P.3d 412, 419 (Alaska 2011) (quoting *Pasternak v. State Commercial Fisheries Entry Comm'n*, 166 P.3d 904, 907 (Alaska 2007)) (When reviewing administrative decisions, "the substitution of judgment standard applies to questions of law where no [agency] expertise is involved.").

31. The original thirteen colonies claimed title to the lands under navigable waters within their boundaries and, because all subsequently admitted states enter the Union on an "equal footing" with the original thirteen, they also hold title to the land under navigable waters within their boundaries. *James v. State*, 950 P.2d 1130, 1134 (Alaska 1997) (quoting *Utah Div. of State Lands v.*

tained title to all land beneath waters that were not navigable at the time of statehood.[32] "Because Alaska is very large, much of it is wilderness, and there are innumerable waters, the federal government has not had time yet to determine what [title] claims it wishes to make."[33] Therefore, the status of some submerged lands in Alaska remains unclear. In order to determine whether a particular waterway was navigable at statehood and quiet title to the submerged lands, the State must bring an action under the Quiet Title Act.[34] But before a party may bring a quiet title action, the Act "requires that the United States claim an interest and that title be disputed."[35]

 If, as Alyeska asserts, both the state and federal governments were requiring Alyeska to pay rent for the same submerged lands within the TAPS right-of-way, then this action could possibly be construed as a formal claim of title sufficient to trigger the State's right to quiet title to the property under the Quiet Title Act. But Alyeska has failed to demonstrate it was actually required to pay rent to both the state and federal governments for the same submerged lands within the TAPS right-of-way. Throughout the proceedings before the Commissioner and superior court, Alyeska asserted in equivocal terms, without citation to supporting evidence in the record, that it was required to pay rent to both the state and federal governments for the submerged lands within the TAPS right-of-way.[36] On appeal, Alyeska relies exclusively on Olson's statement that the Black–Smith & Richards appraisal included lands "[r]eported as disputed acreage in navigable waterways." Olson's statement is essentially hearsay and does not establish that Alyeska has been required to pay rent to both the state and federal governments for the same submerged lands within the TAPS right-of-way.

Absent evidence that the federal government had actually asserted a claim of title over the submerged lands within the TAPS

*United States*, 482 U.S. 193, 196, 107 S.Ct. 2318, 96 L.Ed.2d 162 (1987)). The Submerged Lands Act confirmed that "title to and ownership of the lands beneath navigable waters within the boundaries of the respective States" are vested in the states. 43 U.S.C. § 1311(a) (2006); *see also James*, 950 P.2d at 1134 (quoting 43 U.S.C. § 1311(a) (1994)) ("Under the Submerged Lands Act a state receives title to submerged lands unless the United States has 'expressly retained' them."); *Alaska v. United States*, 201 F.3d 1154, 1156 (9th Cir.2000) ("The Submerged Lands Act gave Alaska title to the beds of navigable rivers on January 3, 1959.").

**32.** *See PPL Montana, LLC v. Montana,* —— U.S. ——, 132 S.Ct. 1215, 1227–28, 182 L.Ed.2d 77 (2012) ("Upon statehood, the State gains title within its borders to the beds of waters then navigable.... The United States retains any title vested in it before statehood to any land beneath waters not then navigable....").

**33.** *Alaska,* 201 F.3d at 1157.

**34.** *Montara Water & Sanitary Dist. v. Cnty. of San Mateo,* 598 F.Supp.2d 1070, 1075 (N.D.Cal.2009) (citing *Block v. North Dakota,* 461 U.S. 273, 286, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)) ("The Quiet Title Act provides the exclusive means by which a party may challenge federal ownership of property."); *see also Alaska,* 201 F.3d at 1156 ("Alaska was admitted to the Union as a state on January 3, 1959. Navigability as of that date determines which government owns the riverbed.").

**35.** *Pub. Lands Access Ass'n v. Jones,* 341 Mont. 111, 176 P.3d 1005, 1008 (2008) (quoting *Leisnoi, Inc. v. United States,* 170 F.3d 1188, 1192 (9th Cir.1999) (*Leisnoi*)); *see also Alaska,* 201 F.3d at 1162 ("Once the government has formally asserted a claim to an interest in land, a state government is entitled to treat the land as 'real property in which the United States claims an interest'" for purposes of obtaining jurisdiction under the Quiet Title Act.).

**36.** In briefing to the superior court, Alyeska asserted that "[a] significant (though presently undetermined) submerged land acreage lies within the State's TAPS right-of-way lease," and argued the Department could not require Alyeska to pay rent for the submerged lands without first presenting evidence showing the State had conclusively acquired title to the submerged lands. In its response brief, the Department argued that Alyeska had waived the issue by failing to identify the lands that it was allegedly required to pay double rent for or even assert that it was actually required to pay double rent. In its reply brief, Alyeska argued that the Black–Smith & Richards appraisal identified a total of 205.78 acres of submerged lands in the TAPS right-of-way, and Olson described these lands as "reported as disputed acreage in navigable waterways" in his review. Alyeska asserted these were the lands it was paying "double rentals" for, but cited no evidence showing it was actually required to pay rent to the federal government for these submerged lands.

right-of-way, the State was not required or allowed to assert a proactive quiet title claim against the federal government. Absent evidence of a claim of title by the federal government, the Department was not required to prove that the State, rather than the federal government, held title to the submerged lands.

## V. CONCLUSION

We AFFIRM the superior court's ruling, which affirmed the Commissioner's September 2006 and April 2008 rulings upholding the Department's 2002 appraisal of the TAPS right-of-way lease.