NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOHN R. TUNLEY, | ) | |
| | ) | Supreme Court No. S-16255 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-05-13094 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ERMA J. MILSPAUGH, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1649 – September 27, 2017 |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: John R. Tunley, pro se, Anchorage, Appellant. Susan Carse, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

# I.     INTRODUCTION

An ex-husband failed to make payments to his ex-wife required under their property settlement agreement. The superior court applied his 40% interest in the former marital home to the amount he owed, entered judgments against him for the amount he still owed, and declared the ex-wife the sole owner of the home. The ex-husband appeals, arguing among other things that the court misvalued the home. We affirm the superior court's decision.

---

\*        Entered under Alaska Appellate Rule 214.

## II. FACTS & PROCEEDINGS

John Tunley and Erma Milspaugh married in 1999, separated in 2005, and divorced in 2007. They entered into a property settlement agreement, which was incorporated into their divorce decree. Under the agreement Milspaugh could continue living in the marital home with the couple's two children, who were born in May 2002 and November 2004. Tunley was to pay her $3,300 per month, which represented "child support[] and an excess, varying amount" they termed an "incremental property division payment," for as long as she and at least one of the children lived in the marital home and at least one of the children was under the age of eighteen. The agreement allowed Milspaugh to maintain the mortgage financing with Tunley as a named borrower or "to refinance, pay off[,] or assume financing in her sole discretion." She also had discretion to sell the property, after which she would receive 60% of the net equity proceeds and Tunley would receive 40%.

A few years later Milspaugh filed a "Motion for Order to Show Cause and[,] in the alternative, Motion for Judgment or New [Qualified Domestic Relations Order]" with the superior court, and Tunley moved for "Partial Rule 60(b) Relief from Marital Property Division." The court issued a decision on November 14, 2011. In this decision the court granted Milspaugh a judgment of $80,359.03 plus interest for her share of a retirement account that the parties had agreed to divide, which Tunley had failed to pay her. The pre-judgment interest was determined to be $14,324.27, for a total judgment of $94,683.30 for Milspaugh's share of the retirement account.

The court also found that Tunley had not paid the full $3,300 monthly property payments since May 2010 and entered a $24,899 judgment against him for his property payment arrearage. The court determined that the $3,300 monthly payments were neither alimony nor creditable to Tunley's 65% personal property obligation. Instead, those payments were intended as a combination of child support and an "excess,

varying amount" for "expenses, utility, and maintenance on the home." The court pointed out that Tunley received a tax benefit for housing costs that he would not actually be contributing to if the payments credited his personal property obligation. The court modified the agreement to disallow Milspaugh a credit for repairs upon selling the home because the $3,300 monthly payments would already have compensated her for the repairs.

Because Milspaugh had refinanced the home in 2010 and used proceeds to discharge her personal debt, the court granted Tunley a credit for the amount Milspaugh had used to discharge her personal debt, and the court modified the agreement to prohibit Milspaugh from "refinanc[ing] the home to discharge her personal debt, . . . remov[ing] equity by increasing the debt, or . . . lengthen[ing] the deed of trust." The 2011 decision was not appealed.

In October 2014 Milspaugh moved to enforce the judgments, seeking to execute them against Tunley's 40% equity in the marital home, which she indicated was "substantially less than the outstanding judgments." She requested that the court enter an order to that effect, thus making her the sole owner of the property. She also requested an additional judgment for arrearages on the unpaid monthly $3,300 payments since the November 2011 decision; she recognized that Tunley's obligation to make further monthly payments would cease once she was granted sole ownership of the home.

The superior court held an evidentiary hearing in May 2015. Based on an appraisal of the home, Tunley and Milspaugh agreed that the value of the home was $320,000. They further agreed that the remaining mortgage was $88,993.60; once $14,886 was credited back for the amount Milspaugh had used to discharge her personal debt, they agreed that the mortgage value was $74,107.60. Based on these numbers, the court determined that the equity to be divided was $245,892.40, and the parties agreed.

Tunley's 40% interest in this net equity was calculated to be $98,356.96. It appears from the recording of the May 2015 hearing that a monthly child support obligation remained and that the portion of the $3,300 that was not child support ceased as of that hearing date.

In February 2016 the superior court issued an order finding that Milspaugh had "paid [Tunley] his 40% equity in the former marital home by crediting the $94,683.00 judgment and accrued interest."[1] Milspaugh was then granted sole ownership of the marital home. Because the amount Tunley owed on the $94,683.30 judgment and accrued interest exceeded the value of his 40% interest in the home, the court entered a judgment against him for the balance owed, $10,824.72. The court noted that the other December 2011 judgment, of $24,899, remained and was not affected by the February 2016 order. It also entered a judgment against Tunley of $74,942 for the monthly $3,300 payments that he had failed to make between the time of the previous order and the May 2015 hearing, when his obligation to make further monthly payments ceased.

Tunley appeals.

---

[1] The superior court's order is inconsistent about the exact number, referring to it first as $94,683.30 and then as $94,683.00; the judgment shows that the correct amount is $94,683.30.

## III.  STANDARD OF REVIEW

We review a superior court's order on a motion to enforce a divorce settlement agreement for abuse of discretion.[2]  Factual findings are reviewed for clear error.[3]

## IV.  DISCUSSION

### A.  The Superior Court Did Not Clearly Err In Crediting Tunley's 40% Equity In The Former Marital Home Against The $94,683.30 Judgment And Accrued Interest And In Entering A Judgment Against Tunley For The $10,824.72 Balance.

Tunley argues that based on current property values "his 40% equity would cover the entire December 29, 2011 balances owed in full," as well as the February 2016 judgment of $74,942 (for his failure to make the monthly $3,300 payments in the period between the 2011 judgment and the 2015 hearing) and "undisclosed attorney fees."  In support he argues that his 40% equity should have been either $110,960, based on a $277,400 property value in 2010, or $124,000, based on a $310,000 property value in 2016; he also argues that the marital home is now valued at over $320,000.  He argues that the superior court's calculation of his "40 percent equity is based on a property value that cannot be confirmed."

These arguments have no merit.  During the May 2015 evidentiary hearing Tunley and Milspaugh both agreed that the value of the home was $320,000, based on an appraisal that Tunley himself apparently had done of the home.  Furthermore, Tunley's calculations of the 40% equity are incorrect, not only because they are based on property values different from what the parties agreed to in the hearing, but also

---

[2]     *Herring v. Herring*, 373 P.3d 521, 528 (Alaska 2016) (quoting *Ford v. Ford*, 68 P.3d 1258, 1263 (Alaska 2003)).

[3]     *Hanson v. Hanson*, 125 P.3d 299, 304 (Alaska 2005) (citing *Schmitz v. Schmitz*, 88 P.3d 1116, 1122 (Alaska 2004)).

because those calculations ignore the existence of a mortgage on the property. In superior court the parties agreed to a mortgage value of $74,107.60 and that the equity to be divided was $245,892.40. The court correctly determined that 40% of this net equity was $98,356.96. Tunley has shown no clear error in the court's determination that his equity interest in the home satisfied the majority of the $94,683.30 judgment and accrued interest, with Tunley still owing a balance of $10,824.72 on that judgment after his financial interest in the former marital home was eliminated.

**B. The Superior Court Did Not Abuse Its Discretion In Entering A $74,942 Judgment Against Tunley For Failing To Make The Monthly $3,300 Payments Between The 2011 Decision And The May 2015 Hearing.**

Tunley terms the February 2016 judgment against him of $74,942 "a doubling ruling unentitled, enriching [Milspaugh]" and argues that this judgment "has no basis and doubles the amount owed." At the same time he recognizes that this judgment was "for failure to make the monthly $3,300.00 payments as set forth in the Original Findings." No further details are provided until his reply brief, where Tunley argues that Milspaugh became the sole owner of the former marital home when she refinanced the home and changed the deed in March 2010. He asserts that he has been unable to claim a tax benefit for the home since that time and cites the superior court's statement in the 2011 decision that "[i]t would not make sense for . . . Tunley to receive a tax benefit related to the home if he were not contributing to expenses related to the home."[4] He appears to argue that the monthly payment requirement should have ceased once the home was "no longer listed in his name" in 2010 and he could no longer

---

[4] This statement is part of the superior court's analysis of the nature of the "incremental property division payment" and is one of the bases for the court's conclusion that the monthly payments were connected to house expenses and that they did not credit Tunley's personal property obligation.

"benefit from either [sic] tax relief or claim the home as an asset," and he suggests that the court was not aware of that "transition of ownership."

The superior court did not abuse its discretion by entering a $74,942 judgment for Tunley's failure to make the monthly payments between its 2011 decision and the May 2015 hearing. The 2011 decision specifically addressed the "intention, effect, and validity of the property payments" and upheld those payments, which it indicated would "continue as long as [Milspaugh] remains in the marital home *and* one of the children is under age eighteen."[5] To the extent Tunley seeks to challenge the 2011 decision, his arguments are untimely because he did not appeal the 2011 decision. Even if they were not untimely, he appears to have waived his arguments by not raising them until his reply brief — in his opening brief he argues only that the $74,942 judgment doubled the amount owed and had no basis.[6] Even if he had not waived his arguments, nothing in the court's decision suggests that the obligation to make the monthly payments would cease if Tunley were no longer listed on the deed or were unable to claim a tax benefit for the home, especially since Tunley owned 40% of the equity under the settlement agreement. Tunley's obligation to make the monthly payments did not cease until the May 2015 hearing when the court ended Tunley's financial interest in the

---

[5]     The court further stated that the payments could last until 2023. Based on the younger child's birth year, it appears that they could actually have continued only until 2022, but regardless it is clear that they would still be in effect at the time of the May 2015 hearing, assuming that Milspaugh and at least one of the children still lived in the home at that time.

[6]     *Alyeska Pipeline Serv. Co. v. State*, 288 P.3d 736, 743 (Alaska 2012) ("Arguments are waived on appeal if they are inadequately briefed or raised for the first time in a reply brief.").

home. Thus, the superior court's entry of a judgment for the monthly payments Tunley failed to make was not an abuse of discretion.[7]

## V.   CONCLUSION

We AFFIRM the superior court's order and judgments.

---

[7] Additionally, Tunley argues that the superior court miscategorized "the amount awarded beyond the percentage of marital estate as a property award" and "miscalculat[ed] the marital estate and previous judgement amounts." Tunley does not elaborate on these arguments, and they are accordingly waived for inadequate briefing. *See Alyeska Pipeline Serv. Co.*, 288 P.3d at 743. Tunley also raises a number of arguments in his reply brief about purported irregularities in Milspaugh's paperwork and issues arising from the superior court's 2011 order. But Tunley did not raise these issues in his opening brief and does not explain what they have to do with the order appealed from. They too are waived. *See id.*